```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION
```

SUSAN DONEFF,                )
                             )
            Plaintiff        )
                             )
        v.                   )   Case No. 2:07 cv 191
                             )
UNITED STATES STEEL          )
CORPORATION,                 )
                             )
            Defendant        )

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 19] filed by the defendant, United States Steel Corporation, on September 30, 2008. For the reasons set forth below, the motion is **GRANTED**.

## Background

Susan Doneff was employed by National Steel Corporation at its Midwest Plant when United States Steel Corporation acquired the assets of National Steel in May 2003. Doneff worked in an apprenticeship program at that time which Doneff complained lacked structure and proper training. (Dep. of Susan Doneff, pp. 50-52) Though temporarily suspended after the purchase by U.S. Steel, the program was reinstated as the "Learner Program," and Doneff joined the program to learn mechanical skills. (Doneff Dep. pp. 49-50) The Learner Program apparently suffered from similar inadequacies and deficiencies that plagued the apprenticeship system, and Doneff felt that her position suffered from

a lack of proper training. (Doneff Dep. pp. 53-55, 138)

In October 2005, Doneff was transferred to the tractor shop and began working with Gregory Slatton, and he started behaving improperly within a week of Doneff's arrival as a co-worker. (Doneff Dep. p. 86) Slatton called her lazy once and referred to her as "bear" because of the size of her hands. (Doneff Dep. pp. 86, 123-24) When Doneff asked Slatton if he was jealous of her larger hands, he replied, "No, I can imagine them holding my dick and how it would look." (Doneff Dep. pp. 123-24) At some point before January 2005, Slatton grabbed her buttocks, but Doneff did not report it. (Doneff Dep. pp. 92-93) On December 6, 2005, Slatton asked to grab it again so that he could "compare it to last time." (Doneff Dep. p. 91) On the same day in the lunchroom, Doneff overheard Slatton use the acronym "TC" to refer to a "typical cunt." (Doneff Dep. p. 125) Again, Doneff did not report any of Slatton's behavior at that time.

On January 17, 2006, Slatton made remarks to Doneff referring to lipstick application, cramps, and adjusting her nipple ring. (Doneff Dep. pp. 100-106) Doneff did not report any of these comments. Slatton directed more comments toward Doneff in mid-January, but none that contained any offensive or sexual connotations: "[I]f you don't like following the rules, you can just quit. Stop bucking the system[;]" and "[Y]ou have a takeover-type personality." (Doneff Dep pp. 106-07) On January 19, 2006, Slatton said to Doneff, "You are an accident waiting to happen and you are lazy." He continued, "Stay away from me and

Dave when we are working . . . stay in the battery area or you never know when you might have an accident." (Doneff Dep. pp. 110-11) Doneff construed this remark as a threat to her safety and immediately reported the remark to her union representative on the Civil Rights Committee. (Doneff Dep. pp. 110, 114-19) Doneff was given a Civil Rights Complaint form to fill out, and she returned it to the Joint Civil Rights Committee on January 27, 2006. This was her first report of Slatton's objectionable behavior to U.S. Steel after she had worked 26 days with Slatton in the tractor shop. (Doneff Dep. p. 124)

U.S. Steel had in effect an Anti-Harassment Policy and Procedure advising all employees of prohibited behavior and its consequences. (Deft. Ex. C) Upon receipt of Doneff's report, U.S. Steel immediately initiated an investigation of her Civil Rights Complaint. Management met with Doneff, her union representatives, and Slatton on February 9, 2006. Slatton denied the alleged harassment, and no witnesses corroborated Doneff's allegations. With Doneff present, Slatton was counseled about unacceptable behavior and warned that discipline and possible discharge would result from any additional offensive behavior. (Deft. Ex. E) The Committee closed the case on March 3, 2006.

Doneff requested information about the resolution of her Civil Rights Complaint and was sent a letter from the Joint Civil Rights Committee dated April 7, 2006. (Deft. Ex. F) The letter informed Doneff that the Committee found probable cause for her allegation, that Slatton had been counseled about unacceptable

behavior, and that he would be subject to discipline and possible discharge if such behavior recurred. (Deft. Ex. F) Doneff, unhappy with this resolution, filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on April 13, 2006, claiming gender discrimination and retaliation under Title VII.

Between the time when Doneff filed her complaint with U.S. Steel and her filing with the EEOC, Doneff received five or six disciplinary letters from her Supervisor, John Lute, for impermissible absences. Though the record is not clear about the reasons for the absences, Doneff stated that she was suffering from migraines in February and March of 2006 and began calling off work for that reason. Two male co-workers from the tractor shop received disciplinary letters for absences at the same time. (Doneff Dep. pp. 137-139) Ultimately, the disciplinary letters were withdrawn with no consequences to the tractor shop workers, including Doneff. However, Doneff argues that her letters remained unresolved much longer than her male counterparts' letters.

Doneff also was unhappy that Slatton ceased talking to her while her complaint was pending with the Committee. Doneff states in her response that there have been no further incidents of harassment by Slatton, that communication between the two of them has improved, but that U.S. Steel "picked up where Slatton left off and began harassing [her] through retaliatory actions." (Pltf. Memo. in Opp. to Deft. Mot. for Summ. J., p. 17)

After receiving her right to sue letter from the EEOC,

4

Doneff filed her complaint in federal court on June 13, 2007. In response to U.S. Steel's Motion for Summary Judgment, Doneff does not dispute any of the facts listed in the Statement of Material Facts filed contemporaneous to the Motion. Doneff argues that the material fact in dispute is whether U.S. Steel properly responded to Doneff's report of harassment on January 27, 2006, and whether the reprimands constituted retaliation for her report.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See **Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004); ***Windle v. City of Marion, Indiana***, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence***, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Ballance v. City of Springfield, Illinois Police Department***, 424 F.3d 614,

616 (7th Cir. 2005); ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir. 2004); ***Hines v. British Steel Corporation***, 907 F.2d 726, 728 (7th Cir. 1990). Finally, summary judgment "will not be defeated simply because motive or intent are involved." ***Roger v. Yellow Freight Systems, Inc.***, 21 F.3d 146, 148 (7th Cir. 1994). *See also **Miller v. Borden, Inc.***, 168 F.3d 308, 312 (7th Cir. 1999); ***Plair v E.J. Brach & Sons, Inc.***, 105 F.3d 343, 346 (7th Cir. 1997); ***United Association of Black Landscapers v. City of Milwaukee***, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the
>
> governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511 *See also* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc.***, 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. §2000e-2(a)(1). This statute "prohibits an employer from requiring people to work in a discriminatorily hostile or abusive environment." ***Wyninger v. New Venture Gear, Inc.***, 361 F.3d 965, 975 (7th Cir. 2004)(*quoting* ***Shanoff v. Ill. Dep't of Human Servs.***, 258 F.3d 696, 701 (7th Cir. 2001)(*quoting* ***Harris v. Forklift Sys., Inc.***, 510 U.S. 17, 21, 114 S.Ct. 367, 1126 L.Ed.2d 295(1993)). The statute's purpose is the prevention of "disparate treatment of men and women in employment." ***Meritor Savings Bank v. Vinson***, 477 U.S. 57, 64,

106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(quoting *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707 n.13, 98 S.Ct. 1370, 1375 n.13, 55 L.Ed.2d 657 (1978)). To establish a prima facie case of sexual harassment, Doneff must show that 1) she was subjected to unwelcome harassment, 2) the harassment was based on her sex, 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere, and 4) there is a basis for employer liability. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)(*citing* *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354-55 (7th Cir. 2002)).

Thus, the "touchstone of Title VII is [] discrimination or disparate treatment" because of sex. *Holman v. State of Indiana*, 211 F.3d 399, 402-03 (7th Cir. 2000)(*citing* *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale*, 523 U.S. at 80 (*quoting* *Harris*, 510 U.S. at 25 (Ginsburg, J., concurring)). Thus, the simple fact that a victim is female does not satisfy the requirement that the harassment she experienced is based on her sex. *See* *Herron v. Daimlerchrysler Corporation*, 388 F.3d 293, 303 (7th Cir. 2004)(finding that the plaintiff's membership in a protected class "does not transform" harassment related to him into harassment related to his race).

If discriminatory treatment exists, a complainant also must

show that the harassment was both subjectively and objectively "so severe or pervasive as to alter the conditions of employment and create an abusive working environment." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-63 (7th Cir. 2002)(*quoting* *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). To determine if the environment was objectively hostile, "a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Wyninger*, 361 F.3d at 975-76 (*citing* *Hilt-Dyson*, 282 F.3d at 463; *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001)). *See also* *Smith v. Northeastern Illinois University*, 388 F.3d 559, 566 (7th Cir. 2004)(reciting same).

In addition to establishing that her co-worker's harassment was unwelcome, based on sex, and was severe or pervasive, Doneff must establish employer liability by demonstrating that U.S. Steel was negligent. *Wyninger*, 361 F.3d at 976 (*citing* *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 381 (7th Cir. 2002)). An employer only is liable "if the employer knew or should have known about the coworker's acts of harassment and fails to take appropriate remedial action." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001). Remedial action is appropriate if it is prompt and reasonably calculated to end the harassment under the particular circumstances of the case, although the employer's liability does not hinge on the

actual cessation of harassment.  *Berry*, 260 F.3d at 811; *Saxton v. American Telephone and Telegraph Company*, 10 F.3d 526, 536 (7th Cir. 1993).  In addition, the victim's expectations of behavior by her employer have no bearing on the negligence analysis.  See *Cardenas v. Frito-Lay, Inc.*, 2002 WL 32357082 at *7 (W.D. Wis. Sept. 30, 2002) ("Plaintiff might disagree with how certain aspects of the investigation and response were handled, but . . . this is legally irrelevant."); *Motley v. Tractor Supply Company*, 32 F.Supp.2d 1026, 1050-51 (S.D. Ind. 1998)("Just because an employee expected more from the employer, or a different response, does not mean that the employer failed to take appropriate remedial action, once it was on notice of the problem.").

Doneff cannot clear the hurdle of establishing employer liability.  U.S. Steel had in place a policy prohibiting harassment and responded to the only complaint from Doneff immediately, causing a cessation of the offensive behavior.  Though Doneff cites a litany of cases discussing the effectiveness of an employer's response, none calls into question U.S. Steel's efficient, effective remedial measure imposed on Slatton.  See *Valentine v. City of Chicago*, 452 F.3d 670 (7th Cir. 2006) (finding a factual issue to exist about *when* an employer was on notice, not whether employer response was reasonable); *Longstreet v. Illinois Dept. of Corrections*, 276 F.3d 379 (7th Cir. 2002) (finding employer response reasonable because victim was never harassed again); *Tutman v. WBBM-TV, Inc./CBS Inc.*, 209 F.3d 1044 (7th Cir. 1998)(finding employer avoided liability by launching

immediate investigation and punishment into co-worker sexual harassment); ***McKenzie v. Illinois Dept. of Transp.***, 92 F.3d 473 (7th Cir. 1996)(finding comments made by co-workers did not rise to the level of sexual harassment and employer's prompt remedial action relieved liability). These cases support, rather than refute, the argument that U.S. Steel's prompt investigation and remedial action were reasonable and, in fact, ended the problem.

Doneff also cites ***Loughman v. Malnati Organization Inc.***, 395 F.3d 404 (7th Cir. 2005), for the proposition that simply talking to harassing employees is not a sufficient response to serious physical violations. The plaintiff in ***Loughman*** was the victim of three physical confrontations which involved forced sexual contact in secluded environments, and the victim reported each one to her superiors after it occurred. The employer did not investigate the first incident until after the victim complained of the third encounter. ***Loughman***, 395 F.3d at 406-07. ***Loughman*** discusses a work environment with a "consistent stream of harassment" at the restaurant, to which the defendant employer responded with 10 to 20 "talks" with the workers "about how to treat female employees." ***Loughman***, 395 F.3d at 407. The Seventh Circuit wisely concluded that the "talks" were not reasonable remedial measures considering the stream of inappropriate language and the physical assaults. ***Loughman***, 395 F.3d at 408.

By contrast, U.S. Steel received a single report of sexual harassment which was immediately investigated and resolved. Doneff testified that Slatton did not say anything inappropriate

11

after she filed her complaint with the Committee. Though reprimands were ineffective in *Loughman*, a single reprimand solved the problem here. U.S. Steel's response was reasonable and successful.

Doneff also argues that U.S. Steel retaliated against her based on her inadequate training and the disciplinary letters she received for impermissible absences. Unlawful retaliation in violation of Title VII occurs "when an employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids." *Kampmier*, 472 F.3d at 939 (internal quotations omitted)(*citing* *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 2410, 165 L.Ed.2d 345 (2006)). An employer effectively retaliates against an employee "by taking actions not directly related to [] employment or by causing [] harm outside the workplace." *Burlington N.*, 548 U.S. at 63, 126 S.Ct. at 2412.

Doneff has two ways of proving retaliation: directly or indirectly. *Kampmier*, 472 F.3d at 939. Doneff only briefed the direct method, but she has presented no direct evidence that her training deficiencies were retaliatory. The fact that she alleges that the training was lacking after her complaint is insufficient proof that it was a result of her complaint - especially since Doneff admits that the same training deficiencies also existed beforehand. Doneff also has presented no direct evidence that the absentee disciplinary letters were retaliatory other than their timing, which coincided with her

testimony of calling off work and suffering from migraines. *See Wyninger*, 361 F.3d at 981 (finding that timing alone is not circumstantial evidence enough to establish a retaliation claim through the direct method).

Likewise, Doneff fails to explain the absences upon which the disciplinary letters were based. Nowhere in the record does Doneff dispute that she was absent. Rather, she admits to missing work at that time due to stress and migraine headaches. The court is left to guess whether these are the same absences for which the letters were sent. Doneff never explains the details of the disciplinary letters. Due to the absence of claims that the letters had no factual basis, it appears that Doneff left early with her co-workers, was warned of possible discipline, and suffered no further consequences. Thus, U.S. Steel has a legitimate nonretaliatory explanation for the letters: Doneff was absent. She contends that having the disciplinary letters "hanging over her head" was a form of retaliation, but in the end, she suffered no adverse employment action as a result of the letters. Given the fact that Doneff admits to absences from work, other male co-workers received letters, and the lack of any adverse action taken as a result of the letters, it is impossible to establish a prima facie case of retaliation.

Because Doneff cannot present direct evidence of an adverse employment action caused by her statutorily protected right to complain about harassment, her claim of retaliation in violation

13

of Title VII fails.

_____

For the aforementioned reasons, the Motion for Summary Judgment [DE 19] filed by the defendant, United States Steel Corporation, on September 30, 2008, is **GRANTED**.

Entered this 26th day of January, 2009.

> s/ Andrew P. Rodovich
> United States Magistrate Judge